## ATLANTIC CITY

*v.*

## THE NEW AUDITORIUM PIER COMPANY.

[Filed August 1st, 1902.]

1. Where a deed shows on its face that it is intended to relocate the site of a right of way, to return the old site to the owners of the fee, and to substitute a new site in its place, and the words of the deed are apt and proper to accomplish the intent of the parties, the deed will be given that effect.

2. Such a deed will not be held effectual to discharge the old site from the easement of the way, but ineffectual to substitute the new site in its place.

3. An owner of lands bordering upon high-water mark in the tide waters of this state, who has not obtained the state's title to the lands lying in front of his property and below high-water mark, has no power to charge the latter with any easement which will be forceful against a subsequent grant by the state of its title in those lands.

4. Where two or more grantors, who own adjoining lots of lands in severalty, join in a deed locating a continuous right of way across all their respective lots, the deed will be held to be the several grant of each owner.

5. Where a deed shows that such owners are actuated by a common purpose to carry into effect by their joint action a general plan for the mutual benefit of themselves and of the public, the expressions of the deed, if obscure or ambiguous, will be construed, if possible, to fulfill the common purpose of the grantors.

6. In the absence of any proof of any agreement that a deed shall be delivered at some particular time, or that it shall be deposited in escrow until all the grantors shall have executed it, or some other evidence of the intention of the parties as to the time of delivery, the general rule is that a deed will be presumed to have been delivered at the time of its date, and the title of the grantee will relate to that date.

7. A deed conveying a right of way for the purpose of erecting thereon a public elevated boardwalk at the edge of the sea, with an aiding covenant that no building should be erected oceanward of the boardwalk, was made and delivered precedently to the making and delivery of a second deed conveying the fee in the lands oceanward of the boardwalk, without mention either of the easement or of the aiding covenant. The second deed was recorded before the first. Before and at the time of the making of the second deed, the first grantee had entered upon the land conveyed, and was then building thereon the elevated boardwalk, which was a steel and wooden structure forty feet wide and eight or ten feet high.—*Held*, the physical condition of affairs on the land put the second grantees at the time they took their deed, upon warning of the claim of the first grantee and was, in legal effect, notice to the second grantees of the first grantee's deed.

8. A deed was made, acknowledged and delivered to a city. It relocated portions of the site of a public right of way. A clause provided that as soon as the city should, by resolution, accept the deed and cause it to be recorded, all the city's rights in the old site should revert to the grantor. The city, before the date of the resolution of acceptance and the recording of the deed, entered into possession of the new portions of the way.— *Held*, the clause will not be held to have postponed the time when the deed operated as a conveyance of the new portions of site of the way, until the passage of the formal resolution of acceptance, &c. That clause had its full effect when it fixed the date on which the old portions of the site of the way should revert to the possession of the grantors.

On bill and affidavits. On order to show cause and defendant's affidavits, and motion for preliminary injunction.

The bill of complaint in this case was originally filed against George C. Tilyou as sole defendant. Subsequently, on the coming in of an order to show cause, it was, by consent, amended by substituting the New Auditorium Pier Company, a corporation of this state, as sole defendant, Mr. Tilyou being president of that company, and the parties appearing by the same counsel.

The bill is filed by Atlantic City to enforce certain covenants contained in two deeds, whereby it is claimed certain lands lying to the oceanward of the present Atlantic City boardwalk were to remain without being built upon, unless by the erection of an iron or steel pier having certain characteristics hereinafter mentioned.

For a number of years previous to the making of either of these deeds Atlantic City had maintained a public boardwalk, at the edge of the ocean, as an attractive public promenade.

The power to lay out and construct boardwalks along the ocean front was given to such cities by an act of the legislature (*P. L. of 1889 p. 206*), with authority to condemn lands for that purpose. By a supplement to this act (*P. L. of 1890 p. 159*) authority was given to construct elevated boardwalks, and to accept dedications of lands or rights for making improvements of like character. In 1896 a further supplement (*P. L. of 1896 p. 18*) authorized the relocation of such walks, and the issue of bonds for the purpose of renewing, repairing and maintaining such public walks. This legislation was followed, so far as it applied to Atlantic City, by several ordinances, passed by that city, arranging for the building and relocation of the boardwalk along the ocean front of the city. The latest of these ordinances, approved May 6th, 1896, providing for the relocation and building of the present boardwalk, may be found annexed to the bill of complaint in this cause.

As the number of visitors to the seaside increased, it became desirable to afford greater accommodations for their entertainment. The owners of the ocean front were in sympathy with

this object, and some of them, in disposing of their lots, inserted in their deeds covenants protecting the use of the boardwalk by the public, and prohibiting the erection of buildings to the oceanward of it, for the purpose of preserving a continuous ocean view from the boardwalk.

The first deed of this character exhibited in this cause was that made by Charles Evans and others to Atlantic City, dated January 2d, 1890. In consideration that the city would erect a boardwalk, it conveyed an easement or right of way for that purpose over a strip of land, sixty feet wide, at the ocean edge, describing the territory in which the right of way was by exact metes and bounds. The deed contained this clause:

"And the said parties of the first part, for themselves, their heirs, executors, administrators and assigns, do hereby covenant, promise and agree to and with the said party of the second part, its successors and assigns, that they, and each of them, the said parties of the first part, their heirs, executors, administrators and assigns, shall not and will not put or erect or allow to be placed or erected on the lands hereby granted, or on the oceanside thereof, any building or structure, except as above provided."

The only provision in the deed which dealt with the erection of any structure on the oceanward side of the boardwalk strip was the one declaring that nothing in the agreement should be construed to prevent any of the grantors from sinking such piling or placing such seawalls on the ocean front as might be necessary to protect his property from the encroachment of the sea; and another clause which excepted such open pavilions as city council might, upon application, allow.

After the deed of Evans and others of January 2d, 1890, had been made and recorded, Evans, on July 22d, 1895, conveyed to Richard F. Loper a lot fronting on the westerly side of Pennsylvania avenue for six hundred feet and having a depth westwardly from that avenue of one hundred and fifty feet. This lot bounded on the "ordinary high-water line of the Atlantic ocean." The territory conveyed included the lands on which both the old boardwalk, existing antecedent to 1896, and the new steel boardwalk, built in the latter year, were located. The

deed conveyed to Mr. Loper, the grantee, the riparian right to purchase the state's lands to the oceanward of the ordinary high-water line. It contained the following recital:

"Subject, nevertheless, and this conveyance is granted and accepted accordingly to the following covenant and conditions, viz., the said grantee, for himself, his heirs, executors and administrators and assigns, covenants and agrees to and with the said grantors, their heirs and assigns, that he, the said grantee, his heirs and assigns, shall never erect upon the said premises any house or other building, nearer the line of the above mentioned Pennsylvania avenue, than twenty-seven feet of the property line. Subject, also, to the easement or right of way over sixty feet of the above described land granted by the said Charles Evans and wife to the city of Atlantic City by indenture dated January 2d, 1890, and recorded in the clerk's office of said Atlantic county in book No. 2 of Assignments, page 237, &c., and in book No. 173 of Deeds, page 11," &c.

After receiving the above conveyance from Evans, which carried the riparian right, Loper, on the 29th day of August, 1895, received from the riparian commissioners of this state a grant of the state's right in the lands lying to the oceanward of the high-water line. The lot of land thus granted was one hundred and fifty feet in width at the high-water line, and extended, of that width from that line, four hundred and twenty-eight feet in a southeasterly direction to the commissioners' exterior wharf line. Its first course runs "southerly along the easterly line of Pennsylvania avenue, extended in a straight line, four hundred and twenty-eight feet, more or less, to the exterior line," &c.

By reason of the greatly increased use of the boardwalk, it appears to have been found necessary to further enlarge its width and length. The act of the legislature passed in 1896 (see *P. L. of 1896 p. 71*), above referred to, enabled cities located on the Atlantic ocean to lay out, construct and enlarge street boardwalks, &c., and to condemn lands for that purpose. Under this statute the ordinance of the 6th day of May, 1896 (a copy of which is annexed to the bill of complaint), was passed. This ordinance, by describing an inland line, laid out a street, sixty feet wide, along the ocean front of Atlantic City, and provided for the erection in said street of an elevated boardwalk, which

should be of the width of forty feet between certain avenues and twenty feet between certain other avenues. At the place where the present dispute has arisen the boardwalk is of the width of forty feet. The other twenty feet of the width of the street lies along the oceanward front of the constructed boardwalk.

While the ordinance providing for the new boardwalk was under consideration, the owners of the beach front, desiring to avoid a condemnation of their lands, agreed to dedicate to the public use the strip sixty feet wide lying along the ocean front. This was manifested by a covenant, in the form of a deed (copy of which is annexed to the bill), which is dated the 30th day of April, 1896. The description of the premises affected by this covenant is of the entire length and width of the proposed street in which the boardwalk has been placed. The particular portions owned by each grantor are not separately described.

This covenant was executed by Richard F. Loper, as owner of lands lying on the ocean front, his wife joining in the deed. The certificate of acknowledgment annexed to the covenant certifies that Richard F. Loper and Mary, his wife, executed and acknowledged it on the 9th day of May, 1896.

On the 30th day of April, 1896, when the above covenant is dated, and on the 9th day of May, 1896, when it is certified to have been made, delivered and acknowledged by Richard F. Loper, he was the owner of the lot of land one hundred and fifty feet wide, or deep, lying on the westerly side of Pennsylvania avenue, which was conveyed to him by Evans. The new boardwalk, constructed under the ordinance of 1896, crosses this lot. Loper was also, on April 30th, 1896, and on May 9th, 1896, the owner of the lot lying to the oceanward of the Evans lot beyond high-water mark, which had been conveyed to him by the riparian commissioners in August, 1895. It is on a portion of this latter-described lot, to the oceanward of the boardwalk, that Loper's ultimate grantee, the defendant, the New Auditorium Pier Company, is in the act of erecting the structure the right to build which is challenged by this suit.

The following diagram, exhibited on the argument, will show the lay of the land:

Atlantic City *v.* New Auditorium Pier Co.

Old 24ft wide Boardwalk [now destroyed.]

to Trofer July 22 1895

Pennsylvania Avenue

New Steel Board Walk

Evans

Exterior Line of right of way for New Steel Walk

Ocean Pavilion

High Water 1895

High Water Line

One Story Building [Auditorium Pier] Troter Aug 29 1895

426

April 1899.

[Locus in quo.

to Troter Co.

Riparian Grant

150

Riparian Commissioners Exterior Line: [2000 ft. from Pacific Avenue.]

Pier:

Atlantic City *v.* New Auditorium Pier Co.

The covenant dated April 30th, 1896, which was executed by Loper and wife and other beach front owners, contained several clauses which affect the present controversy. Among others, the covenantors, Loper and others, promised and agreed, for themselves, their heirs and assigns, that they

"shall not and will not erect or allow to be placed or erected on the lands hereby granted, or on the oceanside thereof any building or structure except as provided by ordinance," &c.

Also the following clause:

"3. It is further hereby covenanted and agreed that the present elevated boardwalk may remain until the new steel walk is built by the said city on the line of the new street as hereby located and described, and until such new walk is built; that no structure or improvements will be made between the said walk, as now located, and the westerly and northerly line of said street. And it is further covenanted and agreed by and between said parties, except for the purpose of maintaining the said boardwalk now constructed as herein provided, that whenever and as soon as the said city, by a resolution or ordinance passed by its council for that purpose, shall accept this conveyance and cause the same to be recorded there, thereupon and thereafter, all the right, title and interest, possession and right of possession (except for the purpose of maintaining the said boardwalk now constructed as before expressed) of, in and to all lands lying westerly and northerly of the said westerly and northerly line of the said street as herein described and located shall immediately cease and determine and revert to the grantors of said lands, their heirs and assigns. And the said city hereby agrees to vacate the said street or such part or parts thereof as lie westerly and northerly of said line without expense to the said owners, their heirs or assigns, they also hereby covenanting and agreeing to waive all allowances for damages (if any accrued by such vacation).

"Provided, however, that the within grantors shall not be prohibited from building a pier in front of their property and connecting the same to the new walk about to be erected, and upon the further condition that the said pier shall be of at least one thousand feet in length extending into the ocean beyond the present sixty-feet wide strip, and constructed of iron or steel, and shall not permit the sale of any commodity upon the same and be confined to charging only an entrance fee; and provided further, that the City Council of Atlantic City shall not grant a right of way to any railroad company or street railway company now incorporated or to be hereafter incorporated over and along the same."

On the 6th day of June, 1896, Loper and wife made a deed to the Mary A. Riddle Company and Joseph A. Brady. This

deed conveyed to the grantees the portion of the premises which
Evans had conveyed to Loper, by the deed of July 22d, 1895,
which bordered on high-water mark for one hundred and fifty
feet and for a distance of three hundred and sixty-two feet on
Pennsylvania avenue. This territory is all to the landward of
high-water mark, and includes the site of the old boardwalk,
and also that of the new boardwalk, but did not include the
place where the defendant company is driving the pilings. This
deed contained the following recital:

"Subject, nevertheless, to the condition that there shall not be erected
upon the said premises any house or other building nearer the line of
Pennsylvania avenue than twenty-seven feet of the property line as set
forth in the deed above recited. Under and subject also to the easement
or right of way of the city of Atlantic City over the portion of said
property granted to said city of Atlantic City for the boardwalk, as
granted by Charles Evans and wife by indenture dated January 2d, 1890,
and recorded in the clerk's office of Atlantic county, aforesaid in book 2
of Assignments, page 237, &c., and in book 173 of Deeds, page 11," &c.

This deed was acknowledged on the 6th and recorded on the
10th day of June, 1896.

On the same 6th day of June, 1896, Loper and wife made
another deed to the Mary A. Riddle Company and Joseph A.
Brady. This deed conveyed to the grantees the same premises
which the riparian commissioners for the State of New Jersey
had, on the 29th day of August, 1895, conveyed to Loper. The
territory conveyed by this deed lies in front of that conveyed
by the last-recited deed and to the oceanward of high-water
mark. It is within the lands conveyed by his deed that the
*locus in quo* is situated. The defendant is driving pilings on
a part of the submerged lands conveyed by this deed, possession
of which it has acquired by lease. This deed contained no refer-
ence to any restriction of any sort whatever imposed upon the
lands conveyed. It also was acknowledged on the 6th and re-
corded on the 10th day of June, 1896.

These dates are of significance, because they are the basis of
the claim made by the defendant company that the deed of cove-
nant, dated April 30th, 1896, made by Loper and other beach
front owners to Atlantic City, was ineffectual to charge that

portion of Loper's lands which was conveyed to the Riddle company and Brady, by these deeds of June 6th, 1896, with the special covenants set forth in that deed, because, the defendant alleges, the deed of covenant to the city was not accepted by Atlantic City, and recorded, until after Loper and wife had conveyed the above-mentioned premises to the Riddle company and Brady.

It will be noted, on looking at the diagram, that the old boardwalk (which preceded the present boardwalk, built in 1896) laid further inland than does the present structure. It was this old boardwalk (erected under the Evans' deed of 'January 2d, 1890) which the covenant deed of April 30th, 1896, provided should remain until the new steel boardwalk (the present structure) should be built. The new steel boardwalk has been so built, under the covenant of April 30th, 1896. The owners of the ocean front, and among others Mr. Loper or his assigns, have received back again, and have taken possession of, the site of the old boardwalk, in exchange for which they gave the right of way on which the new boardwalk is located.

The bill of complaint alleges that Atlantic City took possession of the sixty-foot strip conveyed by the covenant deed of April 30th, 1896, acknowledged by Loper and wife, as above stated, on May 9th, 1896, and erected upon that, the portion of the sixty-foot strip which crossed the Loper land, the elevated boardwalk which is presently located thereon; that, after the city had so taken possession, Loper and wife, by the deed dated the 6th day of June, conveyed the premises in question to the Riddle company and Brady, but that neither the Riddle company nor Brady, nor any other person, ever challenged said possession of Atlantic City.

The bill further alleges that the defendant George C. Tilyou, and, by amendment, that the defendant the New Auditorium Pier Company, has, by intermediate conveyances, come to be the lessee of part of the Loper lot to the oceanward of the boardwalk; that recently, upon a portion of the property owned by Loper when he made the covenant of 1896, and oceanward of the boardwalk, the defendant has begun driving wooden piles preparatory to the erection of some structure thereon; that said

piles are not less than eight feet in height above the surface of the beach; that large numbers of such piles are lying on the premises, and a large force of men is engaged in driving them, and that the defendant gives out and declares that it proposes to erect a structure or building of some character upon the pilings so driven and to be driven. The complainant insists that the defendant has no right to drive such pilings on the oceanward side of the boardwalk, or to erect thereon any structure whatever, and that defendant has been notified that it has no such right, and that it insists upon so doing, without any right whatever.

The complainant charges that the driving of the wooden pilings to the oceanward of the boardwalk, and the erection of any structure of any kind whatever thereon, is a breach of the covenant entered into between the beach front owners, in the dedication agreement of January 2d, 1890, and that of April 30th, 1896, and is likewise a violation of the general scheme entered into between the several owners of the ocean front for its improvement; that the erection of the structures mentioned, if permitted, will be an obstruction to the use of the lands to the oceanward of the boardwalk, by the complainant and the public generally, in the manner contemplated by the provisions of the said covenants.

The complainant prays for an injunction restraining the defendant from proceeding with the driving of the said wooden piling, and from building any structure whatever upon them, at any point on lands oceanward of the boardwalk, and further, that the defendant may be commanded to remove from those premises such wooden piling and constructions as have already been erected thereon.

To the complainant's bill of complaint is annexed a copy of the deed from Loper and wife and others to Atlantic City, dated April 30th, 1896; also a copy of the city ordinance approved May 6th, 1896, relocating and providing for the building of the new steel boardwalk (the present structure); also affidavits as to the time and manner of its construction. The affidavit of the mayor of the city, which shows that, at the time of the conveyance by the several beach front owners to the city, by the

deed dated April 30th, 1896, and at the time Loper and wife conveyed to the Mary A. Riddle Company and Brady, the first or original boardwalk or promenade had been constructed and extended across the entire width or front of Loper's land, and was in actual use by the public, and had been for a long time before,

"and that the new or present boardwalk under the dedication deed dated April 30th, 1896, had actually been located and the erection of the same begun, on and across the lands described in the said deed from Loper to the Mary A. Riddle Company and Brady, as described in the complainant's bill."

An order to show cause why an injunction should not be issued pursuant to the prayer of the bill of complaint was allowed. Upon the coming in of the order, efforts were made between the parties to arrive at some settlement of the dispute. These appeared to be ineffectual. At a much later date the order to show cause was brought up for argument. It then appeared that the named and served defendant, George C. Tilyou, was the president of a corporation, designated the "New Auditorium Pier Company," which held a lease for the *locus in quo* the wooden pilings in question were being driven, on which some sort of structure was about to be erected.

The bill of complaint was thereupon, by consent, amended, as above stated, by striking out the name of George C. Tilyou, wherever the same occurred, and inserting instead thereof the name of the New Auditorium Pier Company (which company was, in fact, the actual defendant, represented by the appearing counsel), and by correcting the description of the *locus in quo,* so that the place where the new piling complained of is being driven should be located as indicated on the above diagram. The complainant further amended its bill by setting out the provisions of an act of the legislature of this state entitled "An act to enable cities in this state located on or near the ocean, and embracing within their limits and jurisdiction any beach or ocean front, to open and lay out a public park or place for public resort or recreation, on and along the beach or ocean front of said city, and to purchase or condemn lands, property and

rights therefor, and to preserve the same from encroachment," approved April 26th, 1894 (*P. L. of 1894 p. 146*), and its proceedings, by ordinance, to open and lay out a park along the beach front of Atlantic City, establishing in the bounds thereof, including within the same, the premises held by the defendant company, upon which it is driving the piling and erecting the structure now in question; that the complainant company is proceeding to acquire lands within the proposed park area, and has acquired about two-thirds of the total ocean frontage, by deeds, signed by the owners thereof, a copy of which is annexed; that it is proceeding to carry said plan into execution by acquiring all the land within said area, either by voluntary conveyance or by use of the power of condemnation given by said recited act. The complainant insists that it is legally bound to carry the plan into completion, by procuring all the land comprised within the park area, and that the effect of the act of the legislature and of the ordinance of Atlantic City, and proceedings thereunder, is that all the lands lying within the description contained within the ordinance have become dedicated to public use, and that neither the defendant nor any other owners of any portions of the lands lying within said park area have any right to burden the same with any further structures or building, by which the amount of damages required to be paid for such land may be increased, and the complainant insists that the new erection proposed by the defendant company complained of in the bill would be in violation of such dedication of the premises within said park area to public use. The complainant further, by way of amendment, charges that, in the year 1899, the Auditorium Pier Company, a former lessee, constructed upon the premises an iron pier, and erected thereon a large building adjoining the boardwalk, and the complainant insists that, in making such construction, the Auditorium Pier Company went beyond the rights reserved to grantors in the deed of April, 1896; and that, in any event, by the erection of the alleged pier, the said Auditorium Pier Company has exhausted whatever rights might have been reserved under said deed to said Richard F. Loper, one of the grantors therein. The complainant further, by way of amendment, charges that the Audi-

Atlantic City *v.* New Auditorium Pier Co.

torium Pier Company, when it erected the said alleged pier into the ocean the distance of one hundred feet, so built the same that it was not, in fact, a pier, and never has been so used; that immediately annexed to and adjoining the boardwalk it constructed, and since used, for purposes of exhibitions and entertainment, a large building; that the alleged pier is very narrow, and is run into the ocean solely as a colorable compliance with the permissive clause of the said deed of April 30th, 1896; that said pier was not erected in good faith, under the provisions of said deed, but solely for the purpose of enabling the premises to be used for the purposes of the said auditorium building, at or near the boardwalk; that the Auditorium Pier Company was notified that the same was a violation of the provisions of the said deed, and that the complainant would take means to procure its removal. The complainant prays that the further maintenance of said building on said pier may be enjoined, and that a mandatory injunction may issue requiring it to be removed.

Upon the hearing of arguments on the order to show cause the amendments above referred to were accepted by both parties, and the deeds above recited were produced by them. The map, of which the foregoing diagram was traced, was submitted by the defendant company. The defendant company filed no answer, but submitted affidavits in response to the bill of complaint and the affidavits thereto annexed.

The defendant's affidavits state the incorporation of the defendant company, its acquirement, by lease, of the premises where the new piling is being driven (indicated by crosses on the map), the construction, by the Auditorium Pier Company (a former lessee), of a pier and auditorium, on an adjoining part of the leased premises, in 1900, and its use of the auditorium building during the season of 1901. They further show that the portion of the leased premises between the outside edge of the present boardwalk and the high-water line of 1895 was conveyed to the Mary A. Riddle Company and Joseph A. Brady by Richard F. Loper and wife, by deed dated and acknowledged June 6th, 1896; recorded June 10th, 1896; they admit that said conveyance was made subject to the terms of the deed (above

42

recited) from Evans to Atlantic City, dated January 2d, 1890; they state, however, that the last-named deed was a grant of the use of the strip, sixty feet wide, therein described (the old boardwalk), "so long as the same shall be used for the purpose of a street and public boardwalk;" and that the portion of lands outside of the high-water line of 1895 was conveyed to the Mary A. Riddle Company and said Brady, by Loper and wife, by deed of June 6th, 1896, which contained no restrictions in regard to the use of the lands therein described.

The defendant's affidavits further state that the deed of covenant, made to the city, of 1896 provided that, when the city council should, by resolution, accept that deed and cause it to be recorded, all rights to lands lying westerly and northwardly of the new boardwalk (that is, to the landward) should immediately revert to the grantors; that such resolution was adopted June 8th, 1896, and the deed to the city was recorded June 16th, 1896; that, by virtue of the resolution and recording of the said deed of 1896, the interest of the city under the deed of 1890 ceased, and the restriction contained in that deed, made by Loper to the Riddle company and Joseph Brady, was no longer of any force or effect; that the two deeds made by Loper to the Riddle company and Brady, dated June 6th, 1896, and recorded June 10th, 1896, were put on record before the dedication deed dated April 30th, 1896 (which was not recorded until the 16th day of June, 1896), dedicating lands for the new boardwalk, and that the said dedication deed is void and of no effect as to the lands afterwards leased to the defendant company by Loper's grantee.

The defendant company denies, also, that it was notified, before it began driving the piling in question on the oceanward side of the boardwalk, that it had no right to drive such piling; denies that the city of Atlantic City has acquired any rights to set-off the defendant company's lands for a public park, and proposed a map of the *locus in quo,* a copy part of which is above exhibited.

The defendant company further states that it intends to broaden and widen the present pier, and to construct the same of steel, in the most approved manner, and that it has entered

into extensive contracts to furnish entertainments on the pier, and for materials for such construction, and that it will be subjected to great losses unless it be permitted to proceed with its proposed improvement.

The defendant company annexes to its affidavits the copy of the accepting resolution of Atlantic City council, dated June 8th, 1896, and also copies of the two deeds above recited, each dated June 6th, 1896, made by Loper and wife to the Riddle company and Brady, one conveying the tract including both the old and new boardwalk down to high-water mark, and the other conveying the lands purchased by Loper from the riparian commissioners, lying between high-water mark and the riparian commissioners' exterior line; which last deed includes the lot on which stands the auditorium pier, adjoining which the defendant company is presently engaged in driving the piling which is the occasion for this suit. (See diagram.)

On the affidavits, deeds and documentary proofs, above recited, the question whether a preliminary injunction should issue on the order to show cause was argued *in extenso.*

*Mr. Burrows Godfrey* and *Mr. Joseph Coult,* for the complainant.

*Mr. Charles D. Thompson,* for the defendant.

GREY, V. C.

The complainant's bill and amendments ask relief which will restrain the defendant company from the further erection of wooden piling, oceanward of the boardwalk, and also that which is mandatory for the removal of the auditorium pier building. The order to show cause in this case goes only to an inquiry whether a preliminary writ of injunction should issue restraining the defendant company from proceeding with the driving of wooden piling and erecting any structure thereon, as, by the bill and affidavits, it appears it is presently engaged in doing. The only matter here under consideration is, therefore, the propriety of issuing a preliminary injunction preventing the defendant from proceeding with the driving of wooden piling and

with construction of its proposed addition to its pier at the place and in the manner presently attempted.

The proofs satisfactorily show that the defendant company is engaged in driving wooden piling at the place indicated by the cross marks on the foregoing diagram, and that the presence of like material conveniently near and the progress of the work indicate that it is preparing to construct a lateral addition to the present auditorium pier building, on the easterly side thereof, which new structure, when completed, will probably be at least fifty feet square, and will run out to the westerly line of Pennsylvania avenue, if extended.   The defendant company admits that it is its intention "to construct a larger pier, broadening and widening the present pier, and constructing the same of steel, in the most approved manner." In actual fact it is, however, clearly shown that the piling which is being driven is *wooden* piling, and not steel.   The construction has not proceeded far enough to show, with certainty, what material may be used in the superstructure to be erected on the wooden piling.

There is a formal assertion that the structure which the defendant company is building is a pier, within the requirements of the deed, but there is no substantial denial of the fact that the defendant is presenty engaged in building with *wood,* while the deed calls for steel or iron, and that the structure in question is located at a point about two hundred and twenty-five feet to the oceanward of the boardwalk.   The proofs show, by irresistible inference, that upon this *wooden* piling, when completed, a superstructure of some kind is to be erected, and that the superstructure will probably be a lateral addition to the present completed auditorium pier.

The substance of the defence rests wholly upon the defendant company's claim that it is in no way bound by any of the covenants made by its predecessors, holders of the title to the lands which it presently leases.

*First.* The defendant contends that the charge of the right of way for the old boardwalk, and its attendant restriction that there should be no erection of any building oceanward of it (imposed by the deed of Evans to Loper, dated July 22d, 1895, by reference to Evans' previous deed to Atlantic City, dated

January 2d, 1890), has no longer any force or effect, because, it insists, that the old right of way was, in express terms, released and discharged by the acceptance of the deed of April 30th, 1896 (Loper and others to Atlantic City), granting the right of way for the new boardwalk.

The time when the portions of the boardwalk which were abandoned by the city should revert to the possession of the grantors was fixed in the deed of April 30th, 1896, to be coincidently with the acceptance of that deed by the city council. The defendant insists that the city council has accepted that conveyance by the resolution of June 8th, 1896, and that the assigns of Loper have thus recovered the abandoned portions of the boardwalk site, freed from the charge of the right of way for a boardwalk imposed by the deed of Evans to Atlantic City, dated June 2d, 1890, and also free from the covenant not to build, &c., to the oceanward of the boardwalk contained in that deed. But they, at the same time, insist that the deed of April 30th, 1896 (which provided the conditions under which the possession of the abandoned portions of the boardwalk reverted to Loper's assigns, the Riddle company and Brady), was in no way operative to bind Loper's assigns, as a covenant for the new right of way and its attendant incidents, because, they say, before Loper delivered it he had conveyed his portion of the new boardwalk right of way to the Riddle company and Brady—that is, they contend that the acceptance of a deed substituting a new location of a continued right of way was forceful to effect a reversion of the possession of the old location to the owners of the fee, but failed to pass any title to the easement in the new location.

Possession of the abandoned portions of the old way was, in fact, taken by Loper or his assigns, without dispute by the city or anyone else, and possession of the new portion substituted in the place of the old way was taken by the city coincidently with or before the delivery of the deed of April 30th, 1896. Each party accepted these acts of possession by the other as according with their respective rights under the deed of April 30th, 1896. All have ever since rested content with this interpretation of the conveyancing in question.

An inspection of the deeds above referred to shows, beyond dispute, that one of the objects sought in making the deed (that of April 30th, 1896) of the owners at the ocean front to Atlantic City was a relocation of the boardwalk. Some portions of it laid in satisfactory locations, other portions laid in unsatisfactory places. The face of the deed shows what was desired, and its legal effect accomplished the thing intended. The purpose sought and accomplished was the continued maintenance of the boardwalk in places where it was satisfactorily located, the abandonment of the inconvenient portions, and their return to the possession of the grantors or their assigns, and the establishment of it in the new places, which were substituted for the ill-placed portions surrendered to the grantors. There never was, in fact, in law or in intent, any abandonment of the continuity of the easement for a boardwalk.

The legal operation and effect of the whole transaction was a relocation of the site of the easement by the acts of all the parties interested. No separate action releasing previous covenants for a boardwalk easement can be imputed to the deed of April 30th, 1896. If it was forceful to release the site of the old boardwalk, it was so forceful because it substituted the new site in the place of that surrendered. The deed of April 30th, 1896, cannot be deemed to have been operative to release the previously-charged easement from the old site, but inoperative to impose the same easement in the new site. So far as the defence depends on this contention, it must be overruled.

*Secondly.* The defendant insists that the restriction against building to the oceanward of the line of the boardwalk, imposed by the deeds of Evans to Atlantic City, dated January 22d, 1890, and the deed of Evans to Loper, July 22d, 1895, never had any force to restrain the erection of buildings oceanward of the boardwalk below the line of high-water mark, where the defendant is now erecting the structure sought to be enjoined, because, the defendant contends, Evans never had title to the lands lying oceanward of high-water mark; that title to those lands was in the State of New Jersey at the time Evans attempted to charge them with the restriction above stated; that the defendant company's piling is being driven at a place cov-

ered by the state's title at the time Evans made the restriction against such structures, and that the restriction is inoperative.

The power of an owner of lands lying at high-water mark to impose a restricting covenant, in the nature of an easement, upon lands lying below high-water mark, is alluded to in the opinion of Vice-Chancellor Reed, in the case of *Atlantic City* v. *Atlantic City Steel Pier Co., 17 Dick. Ch. Rep. 139.* The learned vice-chancellor states his view that as the riparian grant was obtainable only by the owners of lands at the high-water line, the riparian right, when received, was subject to the restrictions which the owners at the high-water line had previously imposed. The judgment there pronounced in no way depended on this passing expression of opinion, as it will be seen on examination that the learned vice-chancellor based his final judgment upon other grounds. The decisions in which this question was elaborately debated do not appear to have been presented by counsel.

In the case now under consideration this point has been argued, with great energy, as controlling the operation of the restriction against the erection of any building on lands lying below high-water mark.

It appears, after considerable litigation, to have been settled, as the law of this state, that an owner of lands bordering on high-water mark, who has not obtained the state's title to the lands lying below high-water mark, has no power to charge the latter with any easement which will be forceful against a subsequent grant of the state's title. The supreme court of the United States, in the case of *Hoboken* v. *Pennsylvania Railroad Co., 124 U. S. 656 (1887)*, passed upon the question whether a riparian owner "had power to dedicate to the public use, as a highway, any part of the land lying below high-water mark." The circuit court of the United States for this district has held that as lands lying below high-water mark belonged to the State of New Jersey, they could only be dedicated or subjected to an easement by the state or its grantees. See first conclusion, *p. 664.* The supreme court of the United States, on writ of error, affirmed this proposition. It declared that if a riparian proprietor attempts to create an easement in lands lying below high-water mark, and afterwards conveys to another his right to

reclaim the land under water fronting his property, his grantee may acquire from the state the title to such land, discharged of the easement.

This is the precise condition of facts which is presented in this case. Evans was the owner of land lying at high-water mark, but not of the state's title to lands lying below high-water mark. He created an easement, by a grant of a right of way for a boardwalk across lands above high-water mark, and, in aid of the full enjoyment of this easement, he attempted to impose a restriction against the erection of any building on lands lying below high-water mark. Subsequently he conveyed the lands bordering on high-water mark to Loper. The latter thereupon acquired a grant of the state's title to the lands under water fronting the property he had purchased from Evans. The judgment of the United States has been accepted and followed in the supreme court of this state, in the case of *City of Elizabeth* v. *Central Railroad Co., 24 Vr. 497,* and in this court, by Vice-Chancellor Pitney, in the case of *Morris and Essex Railroad Co.* v. *Jersey City, 18 Dick. Ch. Rep. 45.* Under the exposition of the law pronounced by these decisions the restriction against the building, &c., sought to be imposed by Evans is nugatory, so far as it is invoked to affect the lands lying below high-water mark acquired by Loper under the grant from the State of New Jersey. The *locus in quo* the defendant is driving piling lies wholly below the line of high-water mark as it existed in July, 1895, the time when Loper received the state's grant. (See diagram.)

It must be held that the complainant has no right to a restraint against the defendant's construction, so far as the complainant's equity depends upon the restrictions, sought to be imposed by the Evans deeds, upon the use of lands lying below high-water mark.

The operation of the restriction in the Evans deeds prohibiting the erection of any building oceanward of the boardwalk, so far as it might affect lands lying above high-water mark, need not be determined on this hearing, as the structure of the defendant here challenged is placed, as the proofs locate it, wholly below high-water mark.

The restrictions against building oceanward of the boardwalk contained in the Evans deeds being ineffectual to prevent building below high-water mark, the defendant insists—

*Thirdly.* That the easement for a boardwalk, and the attendant restriction against building oceanward of the boardwalk, imposed by the deed of Loper and others to Atlantic City, dated April 30th, 1896, are not obligatory upon defendant's lessors, the Mary A. Riddle Company and Joseph A. Brady (holders of the title to the *locus* by conveyance from Loper); nor upon the defendant company, their lessees, because, the defendant says, the deed of April 30th, 1896, of Loper and others to Atlantic City, which conveys the right to the present boardwalk, and prevents building to the oceanward of it, was not made and delivered by Loper, and recorded, until after the two deeds from Loper to the Mary A. Riddle Company and Brady (one of which includes the whole boardwalk, and the other the whole riparian grant, including the *locus*) had been duly made, delivered and recorded.

Shortly stated, the defendant company contends that as to the one hundred and fifty feet of the length of the boardwalk easement, and the attendant covenant not to build to the oceanward of it, which was intended and believed to be conveyed by the deed of April 30th, 1896, by Loper to Atlantic City, that deed failed so to operate as to bind the defendant's grantors, the Riddle company and Brady, and that the latter must be held to own that one hundred and fifty feet of the boardwalk strip, freed from the boardwalk easement, and that the defendant company holds the lands to the oceanward of the boardwalk, which it has leased, freed from the attendant covenant not to build.

It is unnecessary to say that such a condition of affairs would cut out this one hundred and fifty feet of the boardwalk from the public use, and would necessarily defeat the whole object of the grant of the boardwalk, which for all its attractiveness and usefulness is dependent upon two elements—one, that it is continuous along the whole of its length at the ocean edge; the other, that the sea breezes and view be not obstructed and cut off by the erection of buildings to the oceanward of it.

In considering this last contention of the defendant company

it must be noted that Loper, before he executed the deed of April 30th, 1896, to Atlantic City, had acquired the state's title to the lands lying below high-water mark, by the riparian grant to him, dated August 29th, 1895. The lands thus acquired included the *locus in quo* the defendant is driving the wooden piling. Mr. Loper's ownership, when he joined in the deed of April 30th, 1896, imposing a restriction against building oceanward of the boardwalk, radically differed from Mr. Evans' ownership when he sought to impose a like restriction on January 2d, 1890, by his deed of that date to Atlantic City. Mr. Loper imposed the restriction on lands which he owned; Mr. Evans attempted to impose it on land which he had a privilege to acquire, but which he did not own.

On the question raised that Loper's delivery of the deed of April 30th, 1896, was subsequent to his conveyance to the Mary A. Riddle Company and Brady, some consideration should be given to the nature of that conveyance.

An inspection of this deed shows clearly that the grantors were owners of land lying at the ocean front of Atlantic City, and that they were many in number. The other conveyances submitted show that the grantors owned the lands, which they charged by their deed, in separate and several, but adjoining tracts or lots. No grantor appears to have had any interest in any other grantor's lot. They all joined in making one deed, but it operated as the several deed of each grantor. The deed conveys an easement, a right of way, and imposes attending restrictions in aid of the enjoyment of that easement. The territorial description of the right of way is of a continuous strip, sixty feet wide, running along the ocean front, across the several lots of the grantors. The deed describes that this strip shall be used only for a public boardwalk. It has attending prohibitions protecting the interests of the grantors, not inconsistent with the erection and use of the boardwalk, and restrictions preventing them from doing acts destructive of the full enjoyment of the easement. Among the latter is the restriction against the erection of any structure on the ocean side of the boardwalk.

It is impossible to read this conveyance without perceiving

that the grantors, the several owners of the lots crossed by the boardwalk, were all actuated by a common purpose to carry out a general plan to the extent necessary to enable the grantee, Atlantic City, to locate and maintain, on the sixty-foot strip in which the easement was granted, an elevated boardwalk for a public promenade, from which an uninterrupted ocean view might be had, and free access of light and air might add to the attractiveness of the view. Each of the several grantors joining in the deed contributed his portion to the common purpose. Vice-Chancellor Reed, in the case last cited, declared the transaction to be of this nature. He says: "The groundwork of the scheme was a common surrender by the beach owners of a certain degree of control over their own property, in consideration of the benefit that would accrue to them from similar conduct on the part of the other owners." The easement granted and the restriction which secured its full enjoyment were for the common benefit, not only of the grantors, but of the public. A breach of the restriction against building oceanward of the boardwalk, by any one owner, would defeat the general plan to which all contributed, and by which all benefited.

Nothing in the deed, or in the proofs, indicates that there was any understanding or agreement that the deed was not to operate as a conveyance of the easement in the lands of any one grantor until all had executed it. Nor is there any claim that the general plan has been obstructed by the failure or refusal of any beach owner to convey his contributory portion of the continuous easement.

The deed being, as stated, the several contribution by each grantor of his portion of the easement to the general plan, it must be held to have operated as a several conveyance by each grantor of that part of his land included within the sixty-foot strip.

In the absence of proof of any agreement for delivery of a deed, at some especial time, or its deposit in escrow until all the grantors executed it, or some other evidence of the intention of the parties as to the time of the delivery, the general rule is that a deed is presumed to have been delivered at its date. *Ellsworth* v. *Central Railroad Co., 5 Vr. 95.* The title of the grantee

relates to the date of the deed. *Ibid.* This deed being several as to Loper as a grantor, and there being no proof as to its actual delivery, it was, under this rule, delivered on April 30th, 1896. The certificate of acknowledgment is dated May 9th, 1896, but a deed may have been effectually delivered before it was acknowledged. The acknowledgment certified that the grantor acknowledged that he signed, sealed and delivered, &c. These acts had all been done at some time preceding the making of the certificate. Probably, but not certainly, immediately before it was made. If, however, the date of the certificate of acknowledgment be taken to be the date of the delivery of the deed, this, as to Loper, was the 9th day of May, 1896. This date was twenty-eight days before he made the deed for the land (covered, in part, by the boardwalk right of way strip) to the Riddle company and Brady, on June 6th, 1896. Whether Loper's deed to the city was delivered at its date, or at the date of its certificate of acknowledgment, in either case it preceded the making of Loper's deed to the Riddle company and Brady, under which the defendant claims.

It is true Loper's deed to the city conveying the strip was not recorded until the 16th day of June, 1896, while his deeds to the Riddle company and Brady were recorded on the 10th day of June, 1896. But the proof is that the relocation of the boardwalk on the new strip, under the city's deed, was in actual progress of construction, on and across the Loper lands, at the time Loper's deed to the city and his deed to the Riddle company and Brady were made. Brady himself joined in the deed to the city, but probably with respect to other lands crossed by the boardwalk strip. The physical condition of affairs on the boardwalk strip, at the time the Riddle company and Brady accepted their deed from Loper, as proven by the affidavit of Mayor Stoy, showed the presence of the old boardwalk on the property conveyed to them, and also the location and erection of the new boardwalk on and across it. The presence on the premises of the old boardwalk, and the actual construction of the new in progress —a structure built on a steel frame, with a wooden walk, forty feet wide, laid upon it—was so remarkable and public an act of possession that it operated as notice to the Riddle company and

Brady of the city's rights at the time they received their deed
from Loper, if, indeed, they took that deed in ignorance of the
preceding deed to the city, a position which is not supported in
this cause by any proof.

The situation on the ground (two separate boardwalks at the
same time) disclosed the whole plan regarding the relocation
of the easement for the boardwalk.   The old boardwalk was
there, and the new one in progress of erection.   An intending·
purchaser who saw such structures on the land he was about to·
purchase, which were plainly put there in the assertion of some·
right, was upon warning to inquire what that right was.   The·
slightest inquiry would have disclosed all the details of the city's
easement.   The law presumes that the purchaser had knowledge
of such facts as he might have learned had he made such inquiry.

It must be held that the Riddle company and Brady had
notice, when they took their deed from Loper, of the latter's·
previous deed to the city, imposing the easement for the board-
walk and its attendant restrictions.

It is insisted by the defendant company, in aid of its con-
tention for the priority of Loper's deed to the Riddle company
and Brady, that the city's deed, by its own terms, only became·
operative when it had been accepted by the city, by a resolution
or ordinance passed by council for that purpose, and recorded;
and that both the resolution accepting the deed and the record-
ing of it were subsequent, in point of time, to the making of
Loper's deed to the Riddle company and Brady, under which
defendant claims.

The clause in the city's deed regarding acceptance by resolu-
tion did not refer to the time when that deed should operate as
a conveyance of the new site for the easement described.   The
provision regarding acceptance of the deed by resolution, &c.,
is made simply to fix the date when the site of the old board-
walk should be discharged from that easement, and be returned
to the possession of the grantors.

It is further contended by the defendant company that the·
deed of April 30th, 1896, to Atlantic City was an inchoate act
of dedication to public use, when made by Loper, not effective·
until formally accepted by resolution, and that it remained in-

choate after his deed to the Riddle company and Brady; that
during this period of incomplete dedication Loper was not pre-
cluded from retracting until after acceptance by the city; that
his conveyance to the Riddle company and Brady of the prop-
erty to be charged by the dedication, without mention of his act
of dedication in those deeds, preceded any acceptance by the
city of the deed of dedication, and was a clear manifestation
of Loper's desire to recall whatever act had been done by him
to charge his property, and operated as a revocation of the pre-
viously-made inchoate dedication. Counsel for defendant refers
me to the very recent case of *City of Buffalo* v. *Delaware, Lacka-
wanna and Western Railroad Co., 68 App. Div. 488,* in support
of his contention that an imperfect dedication may be retracted
at any time before acceptance by the public authorities. When
that case was on trial below, the trial judge was of opinion that
there was a dedication of the land to a street easement. On
the appeal, the court of appeals said: "Assuming this to be so,
if there had been no acceptance of the street, either by formal
action of the proper authorities, or by user as a highway, the
subsequent grant    *    *    *    was a revocation of this dedica-
tion," citing the case of *Holdane* v. *Trustees, &c., 21 N. Y. 474,*
in support of the proposition that a dedication of a street can
be revoked, if the revocation is before acceptance, and the rights
of third parties have not become vested.

The decision of *Holdane* v. *Trustees* was presented to the su-
preme court of this state to sustain the above proposition in the
case of *Trustees of M. E. Church* v. *Hoboken, 4 Vr. 21.* Com-
menting upon it, Mr. Justice Depue said: "I am unwilling to
accord to the owner of the fee a power of retraction as extensive
as is asserted in the case just cited. Where the question is
whether the way dedicated has become a public highway, so as
to impose upon the public authorities a duty to amend or repair,
an acceptance on their part is essential to that end. *Holmes* v.
*Jersey City, 1 Beas. 299.* And where the acts of the owner relied
on to establish a dedication are not sufficiently indicative of an
intention to donate his property to a public use to constitute a
dedication, an acceptance by the public authorities or user by
the public, acquiesced in by the owner, may be resorted to, to

aid in arriving at his intention. But an acceptance by the public authorities or public user is not essential to conclude the owner from his power of retraction, when his intention to abandon his property and dedicate it to public uses is one unequivocally manifested."

This declaration of the law has been accepted by the unanimous judgment of the court of appeals of this state, in the case of *Hoboken Land Improvement Co.* v. *Hoboken, 7 Vr. 545.* That court there said: "It was argued that the dedication had not been consummated when the suit was brought, by reason of the absence of an acceptance or user by the public of that part of the street which is in controversy. That question has been set at rest in the courts of this state. Acceptance by a formal adoption by the public authorities, or by public user, is necessary to impose on the public the duty to amend or repair, but it is not essential to the consummation of the dedication, so as to cut off the owner from the power of retraction, or subject the dedicated lands to the public use, whenever, in the estimation of the local authorities, the wants or convenience of the public require it for that purpose."

In the case now under consideration it is of little importance which view is taken of the power of a donor to retract a dedication, for the intention of the donor, Loper, gathered from his acts and declarations (*Hoboken Land and Improvement Co.* v. *Hoboken, 7 Vr. 547*), manifested, in my view, an unequivocal intention to join with the other owners to relocate the boardwalk on its new site, for the public benefit as a promenade, before and at the time he made the latter conveyances to the Riddle company and Brady; and those deeds were not intended to retract the relocation of the boardwalk, or to take back its aiding covenant preventing building to the oceanward of it. Loper and the Riddle company and Brady all must have known and accepted that relocation.

This was shown by Loper's allowing the city to proceed with the construction of the new boardwalk, on the new site conveyed by the deed of April 30th, 1896, during the time that the signatures to that deed were being obtained from the various grantors, owners of beach front lands. The city had not only taken pos-

session of Loper's portion of the new strip at and before the making of Loper's deeds to the Riddle company and Brady, but before the final resolution of acceptance of its own deed was passed by council. The Riddle company and Brady took their deeds after the city had taken possession and while it was engaged in the erection of the new boardwalk on the new site on the Loper lands, obviously expending large sums of money upon it. This possession and expenditure by the city was of such a public and notorious character that the Riddle company and Brady must have known of it. Their own acts show that they not only knew, but approved of it, for they accepted from the city possession of the old boardwalk site, and did not complain of the relocation of the boardwalk on the new site. They, or their lessees, with their assent, have since built and connected the auditorium pier building with the boardwalk on this new site, and depend absolutely upon this part of the boardwalk for access to that building. If the city has no right to this new site for the present elevated boardwalk on the Loper lands, and should remove it, there would be a gap in the continuity of the boardwalk, one hundred and fifty feet wide, directly in front of the auditorium pier. Such a condition of affairs was never intended or contemplated by Loper, the Riddle company and Brady, or by the city, prior to and at the time of the delivery of the various conveyances between the parties.

The defendant also claims that the structure which it is in process of erecting is, in fact, a pier, within the recognized exceptions of the deed and covenant made by Loper and others to the city. The proof on this point is unrefuted—that the defendant company is engaged in driving wooden piling. The proviso in the deed requires such piers to be "constructed of iron or steel."

The complainant's counsel contend that the true construction of the proviso in the covenant deed respecting the erection of piers is that it reserved to each grantor in that deed the right, upon complying with the terms prescribed, to erect one pier in front of the property he has conveyed. They insist that any other construction, which would allow an unlimited subdivision of the grantors' lots fronting on the ocean, and the erection of

a pier on each subdivision, would result in the entire shutting in of the boardwalk from ocean view and breezes, and thus defeat the general object. One pier (the auditorium pier) has been erected in front of the Loper property since the making, by Loper and others, of the deed of April 30th, 1896, to the city, and this has exhausted the permission in the proviso. The complainant also insists that the construction to be given this proviso, allowing a pier to be built in exception to the general restriction against the erection of any structures oceanward of the boardwalk, has been settled by the decision of Vice-Chancellor Reed, in the case above cited, where he holds that the grantor, who claims the building which he is erecting to be within the exception as a pier, "must show that its structure, in form and use, comes within the exceptive words of the proviso." The complainant says that the defendant, though plainly proven to be erecting a new structure to the oceanward of the boardwalk, has neither shown, nor attempted to show, that it is in compliance with the requirements of the exceptive words of the proviso respecting piers.

The defendant also claims that the structure in question is an extension of the auditorium pier already erected, to be used with and as part of it, and that this justifies the proposed improvement. To which reply is made that it is a lateral addition to a completed pier, and, as proposed, lies parallel to the boardwalk; that such an addition is not within the contemplation of the proviso. That provides that each pier must be one thousand feet long, but makes no mention of width. If each pier, after being erected, may have lateral additions parallel to the boardwalk, the ultimate result will be that the sea view from the boardwalk and free passage of air to and from will be totally obstructed by the additions, and the general scheme would thus be destroyed.

If it were necessary to determine any of these points, they should, in my view, be decided in favor of the complainant's contention.

The complainant further contends that the effect of the statutes authorizing the condemnation of ocean front lands for pub-

43

lic walks, parks, &c., and of the ordinance of Atlantic City thereunder, has worked a dedication to the public use of the lands described in the ordinance, although they are not yet finally condemned, and that the defendant, whose lands lie within the description, has no right to burthen them with additional buildings, by which the amount of damages required to be paid for them may be increased.

There is no equity in the city, merely because it may have taken some steps looking towards condemnation of an owner's lands, to restrain him from making any use of them which he may deem profitable. Otherwise properties which could be made immediately available for great returns by instant improvements (as many Atlantic City lots can be) would be useless to their owners. In this very case the power to condemn was existent six years ago, but has not yet been completely exercised. Under the constitution of this state an owner cannot be deprived of the full enjoyment of his property before compensation has been made to him.

The complainant is entitled to an injunction restraining the defendant from proceeding with the erection of the structure which it is now engaged in building to the oceanward of the boardwalk.